---
Baker *v.* Spencer.
---

---

## BAKER vs. SPENCER.

Whenever, in the facts found by a referee, it is seen that there has been a conflict in the testimony of the witnesses, it is well established that the finding of the referee, who has seen the witnesses, observed their manner and dispositions in testifying, and had better opportunities than the court for learning their character for veracity, must be sustained.

If portions of the evidence, standing alone, tend to sustain the findings of the referee, that is sufficient. It is not the duty of the reviewing court to go further.

If, from the evidence on paper, it even appears that the weight of evidence is against the referee's finding, the appellate court will not interfere so far as to reverse; unless such weight is so striking and palpable as to excite surprise.

The defendant, representing to the plaintiff that he had the agency for the sale of a sewing machine, for a particular county, and the right to sell and transfer the same, sold and transferred such agency to the plaintiff, who, relying upon the truth of such representation, gave his note for the price,

Baker *v.* Spencer.

and subsequently paid the same. In an action by the plaintiff to recover back the money so paid, the referee found, upon conflicting evidence, that the defendant had not in fact any agency for said county, or right to sell and transfer the same, and that his representations were false. *Held* that this finding warranted the conclusion that the plaintiff was entitled to recover back the purchase money paid by him, with interest.

THIS action was brought to recover back money paid upon a promissory note, upon the ground that the note was obtained by fraudulent representations, and that it was given without consideration. The issues were referred to a sole referee, for trial, who found and reported the following facts:

*First.* That the defendant, about the month of December, 1867, stated and represented to the plaintiff that he had the agency for the sale of the Weed sewing machine for the county of Saratoga, and the right to sell and transfer such agency, and offered and proposed to sell and transfer the same to the plaintiff.

*Second.* That the plaintiff, relying on such statements and representations, and believing the same to be true, agreed with the defendant to purchase such agency of him, and give him in consideration therefor, his (plaintiff's) note for $500, payable in installments; and thereupon did execute and deliver to the defendant such note, as stated and averred in the complaint.

*Third.* That an action was brought upon said note, before Esq. Wells, as is also stated in the complaint, but no judgment was entered in such action, and a new note for $300 was given by the plaintiff to the defendant, in the place and in lieu of said $500 note, which latter note was paid by the plaintiff, as is also stated in the complaint.

*Fourth.* That said new note for $300 was made and delivered by the plaintiff to the defendant on the same representations, statements and assurances of the defendant as were made by him when the first note was given, as herein before stated; and the plaintiff, in giving such note,

relied on such representations, statements and assurances, and paid the same, as aforesaid, without knowledge of their falsity.

*Fifth.* That the defendant had not in fact any agency for said machine, for the county of Saratoga, to sell and transfer, and his representations, statements and assurances in that regard were false and untrue, and said notes were, and each of them was, fraudulently obtained, and were without consideration, and were void.

And as matter of law, the referee found and decided,

1st. That the plaintiff was not estopped from recovering herein by the giving of the new note for $300, above mentioned.

2d. That the plaintiff was entitled to recover back from the defendant the money paid by him on said $300 note, with interest, amounting, at the date of the report, to the sum of $333.25, together with the costs of this action, to be adjusted.

And judgment was ordered and awarded accordingly.

These conclusions of fact and of law were severally excepted to, and an appeal was brought, by the defendant, from the judgment entered upon the report.

*Boies & Thomas*, for the appellant.

*J. C. Ormsby*, for the respondent.

*By the Court,* POTTER, J. The questions discussed in this case involve, necessarily, the examination of the facts, to see whether the conclusions of the referee, severally, can be sustained. If the conclusions of fact can be sustained, the conclusions of law, as found by the referee, are the necessary consequence. Whenever in the facts found, it is seen that there has been a conflict of evidence by the witnesses, it is too well established law to require discussion, or citation of authority, that the finding

of the referee must be sustained. He saw the witnesses, observed their manner and dispositions in testifying, and had opportunities of learning their characters for veracity which the court cannot have. And this is most especially true, when, as in this case, the referee possesses in an eminent degree, experience in the trial of causes, and qualifications as a jurist to appreciate and weigh evidence, and draw legal conclusions therefrom.

Let us, then, take the conclusions of fact separately, and see if there is evidence in the case to support them. The first conclusion is, that the defendant, about the month of December, 1867, stated and represented to the plaintiff that he had the agency for the sale of Weed's sewing machine for the county of Saratoga, and the right to sell and transfer such agency, and offered and proposed to sell and transfer such agency to the plaintiff. We find the following testimony of the plaintiff to sustain this finding: Theodore Baker, plaintiff, was sworn in his own behalf, and said: "I know defendant; he commenced to deal with me in October, 1867; he had a Weed sewing machine in Stillwater and wanted to sell it, and I bought it. Some time after, in November, he wanted me to sell machines for him, or to buy the agency of him for Saratoga county. After some talk I agreed to buy the agency of him for $500, for Saratoga county. He represented that it was a fine thing; that he was making money very fast; said he had the right to sell the agency for Saratoga county. He said other parties wanted to buy, but he would give me the preference of it."

The second finding of fact is as follows: That the plaintiff, relying on such statements and representations, and believing the same to be true, agreed with the defendant to purchase such agency of him, and to give him, in consideration therefor, his (plaintiff's) note for $500, payable in installments, and thereupon did execute and deliver to the defendant such note, as stated and averred in the com-

plaint herein. The same witness testified as to this, as follows: "He said he owned the agency for Saratoga county and proposed to sell it. I relied on those representations, and gave him my note for $500. I afterwards became possessed of the note and destroyed it. The note was dated about December, 1867."

The third conclusion of fact is: That an action was brought upon said note before Esq. Wells, as is also stated in the complaint, but no judgment was entered in such action, and a new note for $300 was given by the plaintiff to the defendant in the place and in lieu of said $500 note, which latter note was paid by the plaintiff, as is also stated in the complaint. There is the following evidence to support this finding. The defendant testified: "I then went to Schuylerville and left the note in the hands of Esq. Wells for collection. It was sued before Esq. Wells. It came on for trial, and I was sworn as a witness. We then adjourned for dinner. Before we went to dinner, Baker's counsel said we had better settle. Baker said he was ready to settle. I said I was, and we then went to dinner. When we got back to the office, after dinner, Potter again proposed a settlement. Potter was Baker's counsel. I asked Baker how much he would give me to settle. He said he had no money. I said then there's no use trying any further to settle. Baker said he guessed he could get some money, and asked me how much I would take. I took him out of the room; he was then crying, feeling very bad. I asked him if he thought he could get money if we could settle. He said he thought he could secure me. I told him I would take $300, if he could secure me. He asked me how much time I would give him. I told him thirty days. He offered Tucker as indorser, and I accepted him. He finally sent me his note for $300 indorsed by Tucker, and that was the last of it." And the plaintiff testified: "After dinner we went back to the justice's office. Potter or some one said we had better

Baker *v.* Spencer.

settle. We went into a room and talked it over and agreed to settle. I was to pay cash or get an indorser. I gave him my note for $300, with indorser, and I was to keep the agency. He accepted the note, and I paid it at maturity, by check, which I paid." (Defendant admits that the plaintiff paid the note.)

The fourth conclusion of fact is : That said new note for $300, was made and delivered by the plaintiff to the defendant on the same representations, statements and assurances of the defendant, as were made by him when the first note was given, and herein before stated, and the plaintiff in giving such note, relied on such representations, statements and assurances, and paid the same as aforesaid, without knowledge of their falsity. The following testimony applies to this finding : The testimony of the defendant which was given on the trial before the justice was read on this trial, and on cross-examination there, was as follows :

Cross-examined : " The note was given for my right in the agency of the Weed sewing machine. I sold to the defendant Saratoga county.

*Q.* What right in the agency of the Weed sewing machine did you have at the time you sold Saratoga county to the defendant ? Objected to by the plaintiff as immaterial. Overruled.

*A.* I had the agency of Saratoga county, and a part of Washington county, to sell the machine. No paper title passed to the plaintiff from me. I held no paper title at the time of transfer, from the company, nor anybody else. The company gave me the right to sell sewing machines in those counties."

In the testimony of the defendant, given before the referee, speaking of the plaintiff, he said : " He wanted to know what I would take. I told him $500. I then took dinner with him. After dinner we went to Tucker's store. He took me one side and said he would take Sara-

toga county ; think we figured some on the population of
the county. He said he would give me his note. I wanted
an indorsed note. He did not want to give one. I in-
quired about his circumstances ; found them good. He
proposed giving a note payable $50 per month, commenc-
ing 1st of January. He then gave me a note for $500,
payable in installments."

The following testimony was given by the plaintiff : " I
bought only the agency for Saratoga county. We never
talked about any thing else. I never talked about buying
his interest in Saratoga county. The first notice I had
that Spencer had no agency for the sale of machines was
the forepart of June, 1868." The plaintiff also called
Frank Baldwin, the traveling agent of the sewing ma-
chine company, who says he was authorized to sell
machines, make collections and transact other business
pertaining to the sale of machines. " I also created
agencies, not strictly agencies, but for selling machines."
After giving account of several interviews between him
and Spencer, the defendant, he said : " In spring of 1868,
in May, I was at Cambridge and heard of Spencer's deal
with Baker. I afterwards and immediately went to Spen-
cer's house and remarked to him that it was a pretty sharp
transaction of his over in Saratoga—alluding to his deal
with Baker—and I thought it might get him into trouble.
I stated to him that he had no authority to make arrange-
ments in Saratoga county, except to retail machines him-
self. At the second interview I had with Spencer, I gave
him the privilege of selling machines himself, if he did
not interfere with other agents. He said, you gave me
Saratoga county. I said I did not, only conditionally, and
he had not fulfilled. I then told him he must con-
sider his business relations with the company discontinued.
He did not claim to have authority from any other person
or sources than from or through me. I did not go imme-
diately from Cambridge to Spencer's ; I went to New

Baker *v.* Spencer.

York first. I made no other arrangements with him after this."

Cross-examined: "I was appointed agent for the company in June, 1867. When I spoke to Spencer about selling in Saratoga county, I don't know that the company had any agent in Saratoga county.. It is my impression they did have, but I cannot give the name. Think I told Spencer there were no agents in Saratoga county, then, that would interfere with his arrangements. I also told him he could sell in Saratoga county, if he did not interfere with others; have had no further conversation with Spencer about Saratoga county, except as I have stated.

*Q.* Did you ever tell Mr. Spencer, at any time or place, that he could have, or did you ever let him have the agency of Saratoga county for the sale of the Weed sewing machine?

*A.* I did tell him that he could have it. I did not ever let him have such agency. I gave Mr. Spencer permission to sell our goods in Saratoga county, but nothing exclusive; nothing that prevented us from appointing any one else; never gave him any exclusive agency; talked of it in case his brother came from Chicago.

Cross-examined: I gave Mr. Spencer the refusal of the agency of Saratoga county a week, or for some certain time. I think it was a week."

The plaintiff further testified: "I first became suspicious when he came on and hurried me up for the cash. I had not heard a word from the company to make me so. I had a suspicion that there was something wrong; I did not know what; that he had misrepresented as to the machines. Had no suspicion then as to his not having the agency. I supposed that was all right. I made inquiry of the company as to Spencer's right to sell the agency in Saratoga county. About the 30th of May, made the inquiry at New York by letter. This was the first I knew on the subject. I then had suspicions that he had no right to

sell the agency. I had then had that suspicion about ten days. I got it from Frank Baldwin, the witness. He volunteered it."

The fifth finding of fact was as follows: That the defendant had not, in fact, any agency for said machine for said county of Saratoga, to sell and transfer, and his representations, statements and assurances in that regard were false and fraudulent, and said notes were, and each of them was, fraudulently obtained, and were without consideration and void.

The plaintiff testified that the first notice he had that Spencer had no agency, was the forepart of June, 1868; this was after the $300 note had been given. One Sidney L. Clark, secretary of the Weed Sewing Machine Company, was examined on commission, and had the following interrogatory administered to him:

Fourth interrogatory. As secretary of said company, do you know, and can you state who were its agents in the sale of the sewing machines of said company, having territory duly allotted to them by said company for and during the year 1867? If yea, was said defendant, William H. Spencer, one of said agents during any portion of said year, and in what towns or counties within the State of New York, and during what portion of said year 1867?

"To the fourth interrogatory, he saith, yes. William H. Spencer was never an 'agent' of Weed Sewing Machine Company, but as appears, and as on our books, he was allotted the town of Greenwich, Washington county, New York, for the sale of our machines, in October, 1867, for so long a time as he did the business satisfactorily."

I have thus selected from the mass of evidence in the case, such portions thereof as tend to sustain the findings of the referee; and standing alone, it seems sufficient. It is not the duty of the reviewing court to go further. If, from the evidence on paper, it even appears that the weight of evidence is against the finding, unless such

Baker *v.* Spencer.

weight is so striking and palpable as to excite surprise, the appellate court will not interfere so far as to reverse. This is not such a case. True, there is some striking conflict, and doubtless much exaggeration, and testimony greatly and clearly influenced by feelings of interest; but who so competent to judge of all this as a competent and fair referee who has had the opportunity to witness the feeling and observe the manner and conduct of the witnesses. Besides, there does not seem to be any moral injustice in the result of this case, which should call for an excessive jealousy on the part of the court against these findings. It is clear the defendant sold to the plaintiff, and received his pay for it, a thing to which he had no title, and for which he had paid nothing. He sold the plaintiff an agency for Saratoga county. He knew he had no such agency to sell; the plaintiff did not know it. The plaintiff supposed he was buying something—a franchise, a privilege, a right that was transferable—and the exclusive right to exercise it within the territory of Saratoga county. He was misled as to this, and the defendant must have known that he was misled, and misled by himself; and he took the plaintiff's money while the plaintiff was acting under this belief. Common justice demands that he should restore it; it was ill gotten gain. There were several objections taken to the rulings of the referee on the trial, and to the admission of evidence; and especially to the refusal to strike out answers to interrogatories; but they are not of sufficient merit to require a reversal of the judgment, and need not be discussed at length. I think the judgment should be affirmed.

[SARATOGA GENERAL TERM, June 6, 1870. *Rosekrans, Potter, Bockes* and *James,* Justices.]